UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:25-CV-00114-GNS

KUNAL KHIYANI                                                              PLAINTIFF

v.

ALLIED ADULT DAY CARE, LLC,
d/b/a ALLIED BILLING COMPANY et al.                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim (DN 24).  The motion is ripe for adjudication.

## I.        STATEMENT OF FACTS AND CLAIMS

In April 2023, Plaintiff Kunal Khiyani ("Khiyani") entered into an equity purchase agreement ("Purchase Agreement") with Defendants Stephen and Kimberly Bryson (collectively, "the Brysons") for the purchase of the Brysons' membership interests in three Kentucky limited liability companies—Devoted Senior Care, LLC, Legacy Senior Care, LLC, and Noble Senior Care, LLC (collectively, "the Companies").  (Am. Compl. Ex. 1, at 1, DN 15-1 [hereinafter Purchase Agreement]).  The Companies are franchisees of Home Instead, Inc., and provide in-home care services.  (Purchase Agreement 1; Am. Compl. ¶ 11, DN 15).  The Purchase Agreement prohibits the Brysons from using the Companies' confidential information and competing with the Companies.  (Purchase Agreement 16-17).  While the Brysons still owned the Companies, they formed Defendant Allied Adult Day Care, LLC d/b/a Allied Billing Company ("Allied").  (Am. Compl. ¶ 18).  Khiyani alleges that the Brysons misrepresented

1

Allied as providing only Medicaid billing services and failed to disclose Allied's performance of case management services.  (Am. Compl. ¶¶ 44-45).

Khiyani asserts the following counts against the Brysons and Allied (collectively, "Defendants"):  (i) injunctive relief; (ii) breach of contract; (iii) breach of covenant of good faith and fair dealing; (iv) tortious interference with contract; (v) tortious interference with business relations; (vi) violation of the Defend Trade Secrets Act; (vii) violation of the Kentucky Uniform Trade Secrets Act; (viii) conspiracy; (ix) unjust enrichment/quantum meruit/restitution; and (x) fraud/negligent misrepresentation, deceit, failure to disclose.  (Am. Compl. ¶¶ 83-160).  After Khiyani moved for a preliminary injunction, an evidentiary hearing was held on October 30, 2025, but the Court ultimately denied his motion.  (Order, DN 19; Mem. Op. & Order, DN 35).  Defendants now move for partial dismissal.  (Defs.' Mot. Dismiss, DN 24).

## II.    JURISDICTION

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 as there is complete diversity between the parties and the amount in controversy exceeds $75,000.00.

## III.    DISCUSSION

### A.    Failure to State a Claim

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  A complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (internal quotation marks omitted) (citations omitted).  "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claim

made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-64 (2007)).

When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *See Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). Notwithstanding this presumption, "the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (internal quotation marks omitted) (citation omitted). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### 1.    *Injunctive Relief*

Defendants correctly note that "'[i]njunctive relief' is not a cause of action, it is a remedy." *Thompson v. JPMorgan Chase Bank, N.A.*, 563 F. App'x 440, 442 n.1 (6th Cir. 2014). In his response, "Khiyani concedes that injunctive relief was included to put Defendants on notice that he was pursuing this remedy . . . ." (Pl.'s Resp. Defs.' Mot. Dismiss 11 n.6, DN 30). Thus, to the extent that injunctive relief was intended to constitute an independent cause of action, it is dismissed.

### 2.    *Real Party in Interest*

Under Fed. R. Civ. P. 17, "an action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). "[T]he real party in interest is the person who is entitled to enforce the right asserted under the governing substantive law." *Certain Interested Underwriters*

*at Lloyd's, London, England v. Layne*, 26 F.3d 39, 42-43 (6th Cir. 1994) (citations omitted). Thus, the question is "to whom [state or federal] law provides a legal right of enforcement." *Cranpark, Inc. v. Rogers Grp., Inc.*, 821 F.3d 723, 731 (6th Cir. 2016). Defendants argue that Khiyani is not the real party in interest[1] for Counts IV through VIII[2]: tortious interference with contract, tortious interference with business relations and prospective business relations, violation of the Defend Trade Secrets Act, violation of the Kentucky Uniform Trade Secrets Act, and conspiracy to commit unlawful conduct. (Defs.' Mem. Supp. Mot. Dismiss 7, DN 24-1).

First, under Kentucky law a plaintiff asserting tortious interference with a contract must have been a party to that contract. *Griffin v. Jones*, 170 F. Supp. 3d 956, 968 (W.D. Ky. 2016) ("'At a minimum, to be actionable,' a party claiming tortious interference with a contract 'must show that a contract existed between it and a third party followed by a breach by the third party.'" (quoting *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1079 (W.D. Ky. 1995))). Khiyani is a party to the Purchase Agreement—and the Companies are not—so Khiyani is the real party in interest for this claim. *Cf. Williams-Sonoma Direct, Inc. v. Arhaus, LLC*, 304 F.R.D. 520, 529 (W.D. Tenn. 2015) (applying Tennessee law) ("The Court finds that Plaintiffs have the right to bring claims of tortious interference with contract . . . .").

---

[1] "While both Article III standing and real-party-in-interest objections are often referred to as 'standing,' they are distinct issues. Article III standing is jurisdictional and implicates Rule 12(b)(1), while real-party-in-interest objections implicate Rule 12(b)(6)." *Brunswick TKTKonnect, LLC v. Kavanaugh*, No. 3:22-CV-4-RGJ-CHL, 2025 WL 877546, at *3 (W.D. Ky. Mar. 20, 2025) (internal citation omitted) (citation omitted). "As a result, the instant motion presents a real-party-in-interest dispute, and the Court will address the motion under Rule 12(b)(6) and Rule 17(a)." *Id.* at *4 (internal citations omitted); *Cranpark*, 821 F.3d at 730 ("[T]he real-party-in-interest requirement is generally viewed as 'an affirmative defense that can be waived . . . .'" (quoting *RK Co. v. See*, 622 F.3d 846, 850 (7th Cir. 2010))).

[2] Khiyani asserts that he is the real party in interest for Count X, fraud/negligent misrepresentation/deceit/failure to disclose, which Defendants do not contest. (Pl.'s Resp. Defs.' Mot. Dismiss 13).

Next, plaintiffs bringing claims for tortious interference with present or future business relations must allege that they had a valid business relationship or expectancy that the defendant interfered with. *See* Restatement (Second) of Torts § 766B (Sep. 2025 update); *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 306 (6th Cir. 2011) ("In *Hornung,* the Kentucky Supreme Court first recognized the tort, expressly adopting §§ 766, 767 and 773 of the Restatement (Second) of Torts."); *Nat'l Collegiate Athletic Ass'n By & Through Bellarmine Coll. v. Hornung*, 754 S.W.2d 855, 857 (Ky. 1988). Khiyani, however, alleges that Defendants interfered with "*the Companies'* business relationships," not his own. (Am. Compl. ¶ 113 (emphasis added)).

Importantly, "[a] member of a limited liability company shall not be a proper party to a proceeding by or against a limited liability company . . . ." KRS 275.155. This remains true when the limited liability company ("LLC") consists of only one member. *Turner v. Andrew*, 413 S.W.3d 272, 276 (Ky. 2013) ("Not surprisingly, courts across the country addressing limited liability statutes similar to our own have uniformly recognized the separateness of a limited liability company from its members even where there is only one member." (citations omitted)). After all, "an LLC is not a legal coat that one slips on to protect the owner from liability but then discards or ignores altogether when it is time to pursue a damage claim." *Id.* Thus, "LLC members, like corporate shareholders, lack standing to sue in their individual capacities when they have not suffered any injury that is separate and distinct from the injury to the LLC or its other members." *Smith v. Tarter*, 305 F. Supp. 3d 733, 740 (E.D. Ky. 2018); *Wells Fargo Fin. Leasing, Inc. v. Griffin*, No. 5:13-CV-00075-M, 2014 WL 241778, at \*7 (W.D. Ky. Jan. 22, 2014).

Defendants maintain that any injury Khiyani suffered is derivative and stems from his ownership of the Companies. (Defs.' Mem. Supp. Mot. Dismiss 8). In his response, Khiyani

5

claims he "acquired and continues to own" the business relationships, but this does not demonstrate that he suffered a separate and distinct injury from the Companies; though he is the sole owner of the Companies, the business relationships belong to the Companies, as Khiyani acknowledged in his own Amended Complaint.   (Pl.'s Resp. Defs.' Mot. Dismiss 13; Am. Compl. ¶ 113).   Therefore, the Companies are the real parties in interest and Khiyani lacks standing to pursue this claim.

Similarly, to plead a violation of the KUTSA and DTSA, a plaintiff must allege that it is the owner of the misappropriated trade secret.  *Alph C. Kaufman, Inc. v. Cornerstone Indus. Corp.*, 540 S.W.3d 803, 818 (Ky. App. 2017); *JTH Tax, Inc. v. Freedom Tax, Inc.*, No. 3:19-CV-00085-RGJ, 2019 WL 2062519, at *11 (W.D. Ky. May 9, 2019).  Khiyani argues in his response that he "purchased [confidential and proprietary information] as part of the transaction," and that the information is "protected by the Agreement's confidentiality covenants."  (Pl.'s Resp. Defs.' Mot. Dismiss 13).

In the Amended Complaint, specifically under his DTSA claim, Khiyani seems to allege that both he and the Companies own the trade secrets at issue.  (Am. Compl. ¶¶ 119-121, 127-130).  Khiyani states he purchased the confidential information and derives value from it, but that the Companies appropriately protected it.  (Am. Compl. ¶¶ 119-121); *see JTH Tax*, 2019 WL 2062519, at *11 ("The DTSA defines a trade secret as information for which (1) the owner has taken reasonable measures to keep secret, and (2) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."  (citing 18 U.S.C. § 1839(3))).  Under his KUTSA claim, however, he explicitly alleges that Defendants misappropriated "the Companies' confidential information."

(Am. Compl. ¶ 135). While the Companies' confidential information is separately protected by the Agreement's confidentiality provision and Khiyani may be entitled to contractual relief, that does not mean that Khiyani owns the trade secrets—indeed, in his Amended Complaint, Khiyani alleges that the confidentiality covenants protect the "*Companies'* proprietary information." (Am. Compl. ¶ 26 (emphasis added)).

Accordingly, Khiyani is not the real party in interest for the KUTSA claim, and though the claims are presumably based on the same trade secrets, he has alleged ownership of the trade secrets that are the basis of his DTSA claim, so that Khiyani has at least alleged that he is the real party in interest for his DTSA claim.

Finally, to the extent that the conspiracy claim is based on a surviving claim for which Khiyani is the real party in interest, such as tortious interference with contract, he is also the real party in interest for the conspiracy claim. As to any conspiracy claim for which Khiyani has not alleged facts that he is the real party in interest, then he is likewise not the real party in interest for the corresponding conspiracy claim.

Next, Defendants argue that because Khiyani is not the real party in interest for some of his claims, those claims must be dismissed. (Defs.' Mem. Supp. Mot. Dismiss 10). "Although Plaintiff is not the real party in interest, it does not necessarily mean that the Court must dismiss his claims." *Barefield v. Hanover Ins. Co.*, 521 B.R. 805, 810 (E.D. Mich. 2014). Per the Federal Rules of Civil Procedure:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3).  "The determination of a 'reasonable time' for the real party in interest to take action is a matter of judicial discretion."  *Barefield*, 521 B.R. at 810 (citing 6A *Wright & Miller's Federal Practice & Procedure* § 1555, at 575-76 (3d ed. 2002)).

Despite the rule's "literal wording," Fed. R. Civ. P. 17(a)(3) does not always apply:

> The purpose of Rule 17(a)(3) is to "protect against forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made."  Fed. R. Civ. P. 12 advisory committee's note (1966).  Accordingly, courts have held that when the determination of the proper party is not difficult and when there has been no understandable mistake, dismissal is warranted despite Rule 17(a)(3).

*Barefield*, 521 B.R. at 810.  "[C]ourts consider 'whether there has been an honest mistake as opposed to tactical maneuvering, unreasonable delay, or undue prejudice to the non-moving party.'"  *F.D.I.C. v. Graham*, No. 2:09-CV-436, 2011 WL 1429218, at \*6 (S.D. Ohio Apr. 13, 2011) (citation omitted).

Defendants assert that Fed. R. Civ. P. 17(a)(3) should not provide Khiyani an avenue to correct the defects in his pleading.  (Defs.' Reply Mot. Dismiss 5, DN 36).  In particular, Defendants assert that they notified Khiyani of the real-party-in-interest issue in their response to his motion for a preliminary injunction, yet Khiyani made no motion to join the Companies, and this kind of "[d]elay despite notice should not be sanctioned by federal courts."  (Defs.' Reply Mot. Dismiss 5).  Defendants do not, however, allege that they have suffered any prejudice because of this delay.  *See F.D.I.C.*, 2011 WL 1429218, at \*7 ("Further, Ms. Graham has not suggested any undue prejudice she will suffer if LaSalle is afforded additional time to substitute or join the real party in interest.  In light of this, the Court finds that LaSalle should be afforded some additional time under Rule 17(a)(3).").

Moreover, "Rule 17 liberally allows a substitution of parties 'when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the

participants.'"  *Pratt v. Progressive Cas. Ins. Co.*, No. 5:10-CV-87, 2011 WL 2160863, at *2 (W.D. Ky. June 1, 2011) (quoting *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002) (Gilman, J., concurring)); *see Act for Health v. Case Mgmt. Assocs., Inc.*, No. 3:12-CV-442-TAV-HBG, 2014 WL 585447, at *3 (E.D. Tenn. Feb. 14, 2014) ("[T]he Court notes that any prejudice to defendant from plaintiff's delayed filing appears to be minimal, given that the underlying facts and allegations of this case would not change by adding PCM of Tennessee as a party to this matter . . . .").  In this instance, joining the Companies as plaintiffs will not change the substance of the allegations against Defendants—as discussed above, many of the claims already include the Companies.  *See Fieldturf USA, Inc. v. Astroturf L.L.C.*, No. 10-CV-12492, 2015 WL 13047566, at *4 (E.D. Mich. July 16, 2015) ("The alteration does not change the substance of the allegations or the claims.").

Defendants also argue that joinder does not cure a standing defect, but Defendants have not alleged an Article III standing defect.  (Defs.' Reply Mot. Dismiss 4-5); *see Pratt*, 2011 WL 2160863, at *3 ("Although the factual allegations in this case would be unaffected by the substitution of Bettye Pratt as the plaintiff, the Court is precluded from consideration of Rule 17 where the original party lacks Article III standing.  In other words, because Thomas Pratt does not have standing, this Court lacks subject matter jurisdiction.  This lack of jurisdiction prevents the Court from even considering a motion to substitute under Rule 17."  (citation omitted)).  "While both Article III standing and real-party-in-interest objections are often referred to as 'standing,' they are distinct issues."  *Brunswick*, 2025 WL 877546, at *3 (internal citation omitted).

Accordingly, joinder is appropriate in this instance.  Khiyani has "no objection to joining the Companies . . . ," though he has not yet sought to do so.  (Pl.'s Resp. Defs.' Mot. Dismiss

14). Khiyani may join the Companies as parties to this action within thirty days of the entry of this order. *See Petleshkova v. Gee*, No. 22-CV-2411-JTF-TMP, 2023 WL 6140146, at *10 (W.D. Tenn. Aug. 11, 2023).

### 3.    *Implied Covenant*

"Within every contract, there is an implied covenant of good faith and fair dealing, and contracts impose on the parties thereto a duty to do everything necessary to carry them out." *Farmers Bank & Tr. Co. of Georgetown, Ky. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005) (citation omitted). "The covenant 'encompasses a[] duty to act sincerely and without deceit or fraud.'" *Hackney v. Lincoln Nat'l Fire Ins. Co.*, 657 F. App'x 563, 577 (6th Cir. 2016) (alteration in original) (quoting *Pioneer Res. Corp. v. Nami Res. Co.*, No. 6:04-465-DCR, 2006 WL 1778318, at *9 (E.D. Ky. June 26, 2006)). As the Sixth Circuit stated:

> In order to show a violation of the implied covenant of good faith and fair dealing, a showing of breach of contract is ordinarily not required; rather, the party asserting the violation must "provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties."

*O'Kentucky Rose B. Ltd. P'ship v. Burns*, 147 F. App'x 451, 457-58 (6th Cir. 2005) (quoting 23 Williston on Contracts § 63:22 (4th ed. 2004)).

Under Kentucky law, a violation of this implied covenant is only viable as an independent tort claim "where a special relationship exists between the parties, namely in the context of insurance contracts." *Babbs v. Equity Grp. Ky. Div. LLC*, No. 1:19-CV-00064-GNS, 2019 WL 5225471, at *2 (W.D. Ky. Oct. 16, 2019) (citing *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, 941 F. Supp. 2d 807, 816 (E.D. Ky. 2013)). "A claim for breach of the implied covenant of good faith and fair dealing can, however, be the basis for a viable breach of contract claim." *Id.* (citing *Scatuorchio*, 941 F. Supp. 2d at 817 (citations omitted)). Khiyani brings his implied covenant claim under contact law, not tort law, so his

10

claim is not defective on that basis.  (Pl.'s Resp. Defs.' Mot. Dismiss 14-17; Am. Compl. ¶¶ 96-102).

Defendants argue that Khiyani's implied covenant claim should be dismissed because it is duplicative of his breach of contract claim.  (Defs.' Mem. Supp. Mot. Dismiss 6).  Even though a violation of an implied covenant is not an independent cause of action, "there is nothing to prevent a plaintiff from pleading his breach of contract claim and his breach of implied covenant claim as separate counts."  *Babbs*, 2019 WL 5225471, at *3 (citation omitted).  "Fed. R. Civ. P. 8(d) specifically states that a complaint may contain alternative or inconsistent claims."  *Id.*  Thus, the fact that Khiyani pleaded separately Counts II and III—breach of contract and breach of covenant of good faith and fair dealing, respectively—is not cause for dismissal of either claim.

Still, a plaintiff may not simply repeat his allegations related to an express breach of contract to plead an implied covenant claim as well.  *Time Warner Cable Midwest LLC v. Pennyrile Rural Elec. Coop. Corp.*, No. 5:15-CV-45-TBR, 2015 WL 4464105, at *4 (W.D. Ky. July 21, 2015) ("Two of these actions—failure to provide proper notice and failure to properly terminate—repeat Time Warner's breach of contract claim and are barred as duplicative." (citing *J. Kokolakis Contracting Corp. v. Evolution Piping Corp.*, 998 N.Y.S.2d 788, 791 (App. Div. 2014)).  As this Court has explained:

> In *Time Warner*, this Court dismissed two implied covenant claims that were based on identical contractual claims, namely the failure to provide notice and to terminate properly.  Even so, the Court allowed an implied covenant claim to proceed on the grounds that the defendant acted arbitrarily to undermine the contract.

*Babbs*, 2019 WL 5225471, at *3 (internal citation omitted).  Additionally, in *Babbs*, the Court noted that the complaint alleged that the defendant "breached the express contract terms and, in

11

the alternative, that [the defendant]'s actions breach a separate implied duty to deal honestly and fairly. [The plaintiff] has not alleged that [the defendant]'s breach of the implied duty of good faith violated the express contract terms." *Id.* (internal citation omitted).

Indeed, as in *Babbs*, Khiyani does not explicitly allege that Defendants' breach of the implied duty of good faith violated the Agreement's express terms. (*See* Am. Compl. ¶¶ 96-102). Khiyani alleges that Defendants "have acted without good faith and engaged in conduct that denied Khiyani the benefit of the bargain originally intended in the Agreement." (Am. Compl. ¶ 100). Khiyani argues that the Amended Complaint alleges a broad course of conduct that goes beyond breach of contract, including Stephen threatening to transfer Allied to his son or another buyer so it would not be bound by any restrictive covenants, unless the Companies used Allied as their billing provider. (Pl.'s Resp. Defs.' Mot. Dismiss 15). Defendants assert that the Amended Complaint ties every factual allegation to the breach of an express contractual obligation; although the factual allegations referenced are largely organized around provisions to the Agreement, it does not go as far as Defendants proclaim. (Defs.' Reply Mot. Dismiss 5; *see* Am. Compl.).

Khiyani also maintains that the Agreement obligated Stephen to provide consulting services to the Companies, which Stephen performed in bad faith.[3] (Pl.'s Resp. Defs.' Mot. Dismiss 15-16). Defendants argue that Khiyani's citation to the Agreement proves that his claims are duplicative; however, "even if a contract expressly permits a course of conduct, a party may still breach the implied duty of good faith and fair dealing if it acts dishonestly or

---

[3] Khiyani also cites the record of the evidentiary hearing, but any factual allegations that were not included in the Amended Complaint do not pertain to the present inquiry. (Pl.'s Resp. Defs.' Mot. Dismiss 16).

unreasonably in carrying out the contract." *Bank of Am., N.A. v. Corporex Realty & Inv., LLC*, 875 F. Supp. 2d 689, 700 (E.D. Ky. 2012) (citation omitted).

Finally, Defendants argue that they have abided by the terms of the Agreement, but at this stage the Court may only determine whether Khiyani has stated a claim, not whether that claim will ultimately be successful.  (Defs.' Mem. Supp. Mot. Dismiss 7).  Because Khiyani has stated a claim, Defendants' motion is denied as to this claim.

### 4.      *Tortious Interference with Contract*

To state a claim for a tortious interference with a contract, a plaintiff must allege:  "(1) the existence of a contract; (2) Defendants' knowledge of this contract; (3) that it intended to cause its breach; (4) its conduct caused the breach; (5) this breach resulted in damages to [the plaintiff]; and (6) Defendant had no privilege or justification to excuse its conduct."  *CMI*, 918 F. Supp. at 1079.

"[A] person cannot tortiously interfere with a contract to which they are a party."  *Griffin*, 170 F. Supp. 3d at 968 (citations omitted).  Additionally, "[a]gents of a party to a contract who act within the scope of their employment cannot interfere with that party's contract."  *Harstad v. Whiteman*, 338 S.W.3d 804, 814 (Ky. App. 2011) (citation omitted).  "However, 'the agent of a principal may be liable for interfering with the principal's contract, if the agent does so for his own personnel benefit.'"  *Brunswick TKTKonnect, LLC v. Kavanaugh*, 661 F. Supp. 3d 698, 711 (W.D. Ky. 2023) (citation omitted).

Defendants assert that Allied is not a third party capable of interfering with the Agreement.  (Defs.' Mem. Supp. Mot. Dismiss 10).  Allied is not a party to the Agreement, but Allied's members, the Brysons, are parties.   (*See* Purchase Agreement).  Defendants assert that the Brysons are agents of Allied, but do not provide citations to any case establishing that the

13

principal (Allied) is not capable of interfering with a contract if its *agents* (the Brysons) are parties to a contract. (*See* Defs.' Mem. Supp. Mot. Dismiss 10-11). Regardless, whether an agent is acting outside their scope of employment is a fact-bound issue that is best answered at summary judgment. *Jackson v. N. Ill. Univ.*, No. 15 C 8748, 2016 WL 11811001, at *9 (N.D. Ill. Dec. 12, 2016) (citation omitted). Thus, Defendants' motion is denied.[4]

### 5.      *Civil Conspiracy*

To prove civil conspiracy, a plaintiff must show (1) an agreement or combination, (2) that is unlawful or corrupt, (3) entered into by two or more persons, (4) for the purpose of accomplishing an unlawful goal. *Ellington v. Fed. Home Loan Mortg. Corp.*, 13 F. Supp. 3d 723, 730 (W.D. Ky. 2014) (citation omitted). "[C]ivil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." *Id.* (quoting *Flint v. Coach House, Inc.*, No. 2012-CA-000580-MR, 2013 WL 869649, at *4 (Ky. App. Mar. 8, 2013)).

"The intracorporate conspiracy doctrine holds that a corporation cannot conspire with its employees, and its employees, when acting within the scope of their employment, cannot conspire among themselves." *Cowing v. Commare*, 499 S.W.3d 291, 294 (Ky. App. 2016), *as modified* (Sep. 9, 2016) (internal quotation marks omitted) (citation omitted). "[T]hat doctrine is a logical extension of our rules that "a corporation can only act through its agents[,]" and that a conspiracy involves "two or more persons[.]" *Id.* (internal citations omitted) (second alteration in original). This doctrine has also been applied to LLCs. *See Crestwood Farm Bloodstock,*

---

[4] Khiyani also defends his claim for tortious interference with business relationships, but Defendants did not move to dismiss that claim. (Pl.'s Resp. Defs.' Mot. Dismiss 18; *see* Defs.' Mem. Supp. Mot. Dismiss 10-11).

*LLC v. Everest Stables, Inc.*, 864 F. Supp. 2d 629, 641 (E.D. Ky. 2012), *aff'd sub nom. Crestwood Farm Bloodstock v. Everest Stables, Inc.*, 751 F.3d 434 (6th Cir. 2014).

Defendants argue that the intercorporate conspiracy doctrine forecloses Khiyani's civil conspiracy claim. (Defs.' Mem. Supp. Mot. Dismiss 11-12). "The question of whether an employee was acting within the scope of employment is generally a question of fact." *Evans v. O'Reilly Auto., Inc.*, No. 3:10-CV-337, 2011 WL 6740570, at *3 (E.D. Tenn. Dec. 21, 2011) (citation omitted). In this instance, "nothing in the [pleading] shows that all of the individual defendants' actions were *indisputably* within the scope of their employment . . . ." *Konica Minolta Bus. Sols., U.S.A., Inc. v. Lowery Corp.*, No. 15-11254, 2016 WL 6828472, at *7 (E.D. Mich. Nov. 18, 2016). "Furthermore, as noted by the District Court in *Konica*, the intra-corporate conspiracy doctrine is a defense. Therefore, Plaintiff need not plead that the individual defendants' acts were outside the scope of their employment. Defendants may raise this issue again after discovery." *Brunswick*, 661 F. Supp. 3d at 715 (internal citations omitted) (citing *Konica*, 2016 WL 6828472, at *7). Defendants' motion to dismiss is denied on that basis.

### 6.      *Fraud/Negligent Misrepresentation/ Deceit/Failure to Disclose*

Defendants argue that fraud, negligent misrepresentation, and failure to disclose are all distinct claims under Kentucky law, and that Khiyani's combined Count X fails to meet federal pleading requirements. (Defs.' Mem. Supp. Mot. Dismiss 13). Khiyani represents his claim as consisting only of fraudulent and negligent representation, so the Court will do the same; any claim for deceit or failure to disclose is dismissed. (Pl.'s Resp. Defs.' Mot. Dismiss 20-23); *Atchison v. Hubbell Indus. Controls, Inc.*, 777 F. Supp. 3d 834, 850 (M.D. Tenn. 2025) ("[W]here a party fails to respond to an argument in a motion to dismiss, 'the [c]ourt assumes he concedes this point and abandons the claim.'" (citation omitted)).

15

The Federal Rules of Civil Procedure permit a party to allege "2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8. Moreover, "the Federal Rules of Civil Procedure empower—and require—the Court to "construe[] [pleadings] so as to do justice." *Steele v. Cmty. Loan Servicing, LLC*, No. 1:23-CV-497, 2024 WL 37116, at *3 (S.D. Ohio Jan. 3, 2024) (alterations in original) (quoting Fed. R. Civ. P. 8(e)). Faced with two claims under a single count, a sister court found that "the proper way to construe [this count] is to find that it raises *two* distinct, although admittedly related, state-law claims against [the defendant]—not just one as originally styled." *Id.* Therefore, this Court will consider each claim separately.

### a.    Fraudulent Misrepresentation

To succeed on a claim for fraud under Kentucky law, aa plaintiff must prove:

(1) that the declarant made a material representation to the plaintiff, (2) that this representation was false, (3) that the declarant knew the representation was false or made it recklessly, (4) that the declarant induced the plaintiff to act upon the misrepresentation, (5) that the plaintiff relied upon the misrepresentation, and (6) that the misrepresentation caused injury to the plaintiff.

*Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009) (citation omitted).

As a threshold matter, when a party alleges fraud in federal court, the "party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To plead with particularity, a plaintiff must provide the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Tew v. MCML Ltd.*, 751 F. Supp. 3d 733, 756 (E.D. Ky. 2024) (internal quotation marks omitted) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)), *on reconsideration in part*, 800 F. Supp. 3d 752 (E.D. Ky. 2025). This rule, however, "is to be considered in light of the entire spirit of modern pleading which lays emphasis upon short, concise and direct pleading." *Morris v. Tyson Chicken, Inc.*, No. 4:15-

16

CV-00077-JHM, 2015 WL 7188479, at \*6 (W.D. Ky. Nov. 13, 2015) (citation omitted).

Therefore, "it is not necessary to recite each minute detail." *Id.* (quoting *Derby City Capital,*

*LLC v. Trinity HR Servs.*, 949 F. Supp. 2d 712, 726 (W.D. Ky. 2013)).  "[T]he threshold test is

whether the complaint places the defendant on sufficient notice of the misrepresentations,

allowing the defendants to answer, addressing in an informed way the plaintiffs' claim of fraud."

*Id.* (quoting *St. Martin v. KFC Corp.*, 935 F. Supp. 898, 909 (W.D. Ky. 1996)).

Defendants argue that Khiyani fails to state his fraudulent misrepresentation claim with

particularity.  (Defs.' Mem. Supp. Mot. Dismiss 13-14).  Khiyani responds that:

> The Complaint identifies: (i) <u>who:</u> the Brysons; (ii) <u>when:</u> during the due
> diligence period and negotiations leading to the April 2023 Agreement (including
> the weekend between the execution of the documents and the effective date for
> the closing), (iii) <u>the context:</u> intentionally failing to provide accurate financial
> statements and removing all cash from the bank accounts, which had the effect of
> artificially inflating the Companies' profitability (i.e., earnings before interest,
> taxes, depreciation and amortization, a.k.a. EBITDA), which was used to
> calculate the purchase price; and purposefully representing that the businesses'
> operations were not changing, including Stephen's specific misrepresentations
> that Allied would simply be an "alternative" Medicaid billing company in
> addition to Heartsong for the Companies and that his interests were "aligned"
> with Khiyani's to grow the Companies.

(Pl.'s Resp. Defs.' Mot. Dismiss 21 (citation omitted)).  Thus, the Court will construe Khiyani's

Amended Complaint as focusing on two categories of misrepresentations: (1) the accuracy of the

financial statements Defendants provided and (2) the nature of Allied's business.

Defendants, however, insist that Khiyani "does not identify the exact words used,

whether they were written or oral, or the specific document or conversation in which each

representation was made."  (Defs.' Mem. Supp. Mot. Dismiss 14).  While true, "[c]ourts

[assessing 9(b) particularity] are [] more lenient when the alleged wrong did not occur at a

discrete time and place and instead the transactions involved are complex or cover a long period

of time." *Tew*, 751 F. Supp. 3d at 757 (alterations in original) (internal quotation marks omitted)

17

(citations omitted).  Khiyani's allegations as to time, place, and content are sufficient to put Defendants on notice and enable them to respond.  *See id.*; *Brewer v. Monsanto Corp.*, 644 F. Supp. 1267, 1273 (M.D. Tenn. 1986) (holding plaintiffs adequately pleaded fraud even though "they have not identified the specific statements, only the content").

Defendants also assert that Khiyani fails to identify the speaker of each misrepresentation.  (Defs.' Mem. Supp. Mot. Dismiss 13).  Courts have required plaintiffs to "allege the speaker of the alleged statements, instead referring vaguely only to 'defendants'" when there are many defendants in the case.  *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 551 (6th Cir. 2012).  Unlike *Cataldo*, in which there were sixteen defendants, there are only three defendants here, and this claim only implicates the Brysons, who may have made representations jointly.  *Id.* at 551 n.8; (Am. Compl. ¶¶ 150-160).  For each allegation, Khiyani accuses "Defendants," which, in context, only refers to the Brysons, "the Brysons," or "Stephen" specifically.  (Am. Compl. ¶¶ 150-60).  Thus, Khiyani has adequately identified the speakers.

Defendants argue that Khiyani does not make allegations that show the challenged statements were false when they were made, relying on conclusory phrases quoting Khiyani's assertion that Defendants "knew, or should have known, that these representation were false." (Defs.' Mem. Supp. Mot. Dismiss 14).  That is not the end of the sentence in the Amended Complaint, though:

> Defendants knew, or should have known, that these representations were false and misleading, *as Defendants had caused or permitted the withdrawal of all the funds from each of the Companies' bank accounts immediately prior to closing that were intended to be reserved for the Companies, leaving the Companies out of compliance with legal requirements and artificially inflated the EBITDA that was used to calculate the sales price.*

18

(Am. Compl. ¶ 155 (emphasis added)).  Khiyani does not rely on conclusory allegations—he provided factual allegations to support his conclusion in the very same sentence, which Defendants selectively omitted.

Finally, Defendants assert that Khiyani failed to adequately plead detrimental reliance. (Defs.' Mem. Supp. Mot. Dismiss 15).  Khiyani responds that he "specifically pleads his reliance upon these points and the harm caused by Defendants' actions," but provides no citation to his Amended Complaint to point the Court to these allegations.  (Pl.'s Resp. Defs.' Mot. Dismiss 21).  In his Amended Complaint, Khiyani alleges that he "detrimentally relied on Defendants' misrepresentations in proceeding with the Agreement . . . ."  (Am. Compl. ¶ 159).  Thus, reliance has been sufficiently pled.  *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 515 (6th Cir. 1999) (holding reliance was adequately pled where plaintiffs "contend that in reliance upon the agent's false representations of material facts, they surrendered their existing life insurance policies to purchase new . . . policies"); *Brewer*, 644 F. Supp. at 1271 ("Plaintiffs allege that had they known these facts they would have either quit or demanded higher wages, indicating reliance injury.").  Defendants' motion to dismiss is denied.

### b.      Negligent Misrepresentation

A plaintiff asserting negligent misrepresentation under Kentucky law must prove that:

> 1) the transaction at issue is one in which the defendant had a pecuniary interest; 2) the defendant supplied false information; 3) the information was supplied for others' guidance in their business transactions; 4) the defendant failed to exercise reasonable care in communicating the information; 5) the plaintiff acted in reliance thereon; and 6) the false information caused injury.

*Helton v. Am. Gen. Life Ins. Co.*, 946 F. Supp. 2d 695, 707 (W.D. Ky. 2013) (citation omitted).

"A plaintiff alleging a negligent misrepresentation claim under Kentucky law must meet the heightened pleading requirements of Rule 9(b)."  *Sims v. Atrium Med. Corp.*, 349 F. Supp. 3d 628, 644 (W.D. Ky. 2018) (quoting *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d

19

239, 247-48 (6th Cir. 2012)).  Again, Defendants attack the sufficiency of Khiyani's allegations regarding reliance.  (Defs.' Mem. Supp. Mot. Dismiss 16; *see* Pl.'s Resp. Defs.' Mot. Dismiss 23).  As with the claim for fraudulent misrepresentation, Defendants' motion is denied.

### B.      Necessary and Indispensable Parties

Under Fed. R. Civ. P. 12(b)(7), the Court may "dismiss an action for failure to join a party in accordance with Rule 19."  *Register v. Cameron & Barkley Co.*, 467 F. Supp. 2d 519, 530 (D.S.C. 2006).  In relevant part, Rule 19 provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A)      in that person's absence, the court cannot accord complete relief among existing parties; or
> (B)      that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> (i)      as a practical matter impair or impede the person's ability to protect the interest; or
>> (ii)      leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
> . . . If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.

Fed. R. Civ. P. 19(a)(1), (b).

Because the Court will permit Khiyani to add the Companies as plaintiffs, as discussed above, and Defendants do not allege that the Companies will destroy subject-matter jurisdiction, Defendants' motion to dismiss is denied on that basis.  *Cf. Pedersen v. Dreams Come True Aviation, LLC*, No. 2:18-CV-1323, 2019 WL 1936144, at *4 (S.D. Ohio May 1, 2019).

## IV.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.      Defendants' Motion to Dismiss for Failure to State a Claim (DN 24) is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's claims for injunctive relief, deceit, and failure to disclose are **DISMISSED WITHOUT PREJUDICE**.

2.      Plaintiff must cure his real-party-in-interest defect by **July 24, 2026**.  If Plaintiff fails to do so, Defendants may move the Court to reconsider its ruling on their motion.

**Greg N. Stivers, Judge**
**United States District Court**
June 23, 2026

cc:     counsel of record

21